Your Honors, my name is Michael Groh here on behalf of Century 21, and this is an appeal from a summary judgment granted in a trademark case involving the Century 21 mark. Twenty years ago, this Court held that mark to be a strong mark entitled to broad protection and upheld an injunction against use of the word Century in combination with the words Investments in Realty. Fifteen years ago, the Federal Circuit upheld a decision, or actually ruled, that there was a likelihood of confusion between Century 21 and Century combined with Life of America for insurance. And though the strength of the mark has increased in the intervening years, the District Court here found there was no likelihood of confusion between Century 21 and Century in combination with the descriptive words Insurance Group or Surety Group. Are you arguing, you're not arguing collateral estoppel or something like that? No, no, Your Honor. I'm merely pointing out that this District Judge did not give the same scope of protection which the Century 21 mark deserves, even though it has become more famous today than it was in those prior cases. Well, let's assume that the District Court judge was wrong, and let's assume that the Century 21 mark is very strong and is similar to Century Surety. Is this enough to overcome summary judgment if all the remaining factors, or most of them, show that there is no likelihood of confusion? Well, and that's where we take issue with the District Judge, Your Honor, because the judge did go through each of those remaining factors and made But the question is, your main argument seems to be it's a very strong mark. Yes. But my question to you is, is that enough? It should have been enough to withstand summary judgment, particularly in light of Well, let's take some of the things that the judge thought weighed the other way, in particular. First of all, he thought that there was third-party use. In fact, there's no evidence in the record showing that any Century mark is actually displayed in connection with third-party insurance. Okay. But that isn't answering my question. What do you have to show, if anything, beyond the fact that it's a strong mark? Do you have to show anything? Yes. Okay. We would have You're now going to tell me what you showed beyond the fact that it's a strong mark. First of all, we showed that the marks are similar. We showed that the services in question are similar and related. The marks are, you know, the marks are similar in the sense that they both use Century. But if you look in the phone book, there are lots and lots of Centuries. I've got plants in my front yard that are called Century plants. There's nothing very distinctive about Century. There is something very distinctive, though, just in my looking at it, about Century 21. But Century insurance doesn't use 21. So the fact that Century 21 is strong, what bearing does that have on the fact that Century isn't using Century 21? So there's less likelihood of confusion just because of that. As this Court has held, similarities are given more weight than differences, particularly whereas in this case you have a situation where the parties are selling related services, where the defendant in this case is telling the District Court one thing, that it's only selling excess surplus line insurance, and is telling the Patent and Trademark Office that it's entitled to exclusive rights in Century for property insurance, commercial property insurance. Okay. Well, I guess what's missing for me is your evidence of likelihood of confusion. Any polls that you talk to people in the community, et cetera, and so if you refer the record is huge. I've never seen such a lawyered case in my life. But I couldn't find in it any direct evidence of likelihood of confusion by the general public. Well, Your Honor, there's no survey and we haven't found any evidence of actual confusion. But I think in this case that should not be given the kind of weight it ordinarily is for this reason. This defendant claims that it does no advertising, that in many cases its customers don't even know they have the policy or they may not see the policy until it's delivered. It claims that it doesn't have any offices. And this, it's not like candy bars where you might be dissatisfied and call someone. We don't even know how many customers they have. But the fact of the matter is many people may have this insurance. The strength of the mark Century 21 creates an association in their minds when they see Century used on insurance. And in fact, they may very well be confused. Yes, they may very well, but you don't have any evidence that they are. That was Judge Nelson's question. Have you asked anybody? Are there any polls? Are there any? There are no surveys, Your Honor. Was there any testimony from insurance agents who handle Century surety products? No. I thought that there was. Well, there were. They said there was none. Yes. There were a few who testified. And there was no confusion? They were not aware of any, but there was also testimony from Century 21 franchisees showing that they actually offer the same kind of services. The judge held that Century 21 is not selling insurance. But in fact, Century 21 offers a home protection program which is a type of insurance. And when a court is asked to evaluate likelihood of confusion, they have to weigh all of the factors. They have to look at the similarity of the marks, the similarity of the services. Real estate and insurance are complementary services. Every real estate sale entails a sale of insurance if there's a mortgage involved. Century 21 franchisees are typically a one-stop shop, and they either offer products like the home warranty service. In the past, some of them have actually been part of the MetLife sales program of insurance. And in this case, there's also evidence that Century surety sometimes uses real estate agents to sell its insurance. So there's an overlap. Is that what you're going to argue with the jury? Yes. We would go through each of these factors point by point. The strength of the mark. We would argue the similarities of the marks. We would argue the relatedness of the service. And the similarity of the mark is that they both use the word century. They both begin with the dominant word century. Century 21 is the most famous mark that has that word. You know, look at eBay. Yes. And by chance I was on the panel in eBay. Right. But eBay is not bay. eBay is eBay. Century 21 is not century. It's century 21. And the strength of the mark, doesn't it come from the combination rather than the use of one term alone? Well, prior courts have not found that, Your Honor. Well, in eBay, we concentrated on the eBay. And even perfume bay, it was not the bay that was the problem. It was the E coming up right next to the bay. Right. But I would point to the various cases that we've cited, including the Century Life case, where, in fact, the Federal Circuit found that those marks were similar enough that that factor weighed in favor of a finding of likelihood of confusion. None of these other marks, including the century insurance mark, have been advertised or publicized. Century 21 is the mark that comes to the public mind. And I would point out there are other marks that the district court excluded here. Century 21 owns 21st Century for Insurance, and they own New Century Title. These marks were acquired right after the close of discovery, but the judge said you can't bring them up. Apparently we have to bring another lawsuit and wait years to come to a conclusion. Well, I think your law firms will stay in business. I'm sorry? With one more lawsuit, you may, what was it, 11 huge volumes of excerpts of record. This is a continuing long-term source of income, I would assume, for all the law firms involved. Not that that's terrible, but when you just mentioned that you're going to have to bring other lawsuits, I guess the red flag went up. The law imposes on a trademark owner the obligation to police its mark. If this court were to allow Century Insurance to obtain its registration, maintain its registration for Century Insurance for commercial property insurance, they would in essence be getting a windfall. They'd be getting an asset that they could sell to someone else, conceivably to even one of Century 21's competitors. All right. I understand your position. I'd like to reserve the remainder for rebuttal. If it pleases the Court, my name is Dave Rogers, and I'm the attorney for Century Assurity Company. And first, I'd like to make some comments in response to what Mr. Groh said on behalf of Century 21. First of all, I'm just going to take them one by one. He says that the strength of the mark has increased since the other cases, finding that Century 21 was strong. Your honors are correct that those were just factual findings in that case. Those are not legal precedent here. However, all of the advertising of Century 21 is, as you pointed out, for the entire term Century 21, it's a unitary mark. It is undisputed that they do not use the term Century alone, that they have not advertised the term Century alone, they have not registered the term Century alone. There is not a survey showing that consumers recognize them by the term Century alone. In addition, contrary to what Century 21 is stating here, in its dispute that they had just prior with us, they argued that the dominant portion of its trademark is the entire term Century 21, not just Century alone. And also I'd like to point, direct the Court to the Fruit of the Loom case, where one of the findings in that case was that even though Fruit of the Loom spent $58 million a year advertising Fruit of the Loom, it was for the entire expression Fruit of the Loom and not for the sole word Fruit, so the advertising could not be extended to strengthen the word Fruit. And in that case, they were prevented from trying to monopolize the word Fruit. I'd also like to point the Court to the AccuRide case, where AccuRide said that, again, argued its period of advertising, and the Court found that the advertising in this case can't help you because the plaintiff has been using or, excuse me, the defendant has been using its mark concurrently with all of your advertising. So how can you advertise? How can that change things here because you've been coexisting during this entire time? Mr. Groh also said that they showed that the services are the same. I think that probably the most important piece of evidence in that giant excerpt of record you have is the 30B6 deposition of Century 21 by their Vice President, Mr. Dale Omer. In there, Mr. Omer was asked point-blank about his knowledge of our services, his knowledge of our trade channels, his knowledge of our advertising channels, and his knowledge of our trade organizations. He was also, and right down the line, he said he had no knowledge. He was also he contradicted this at a later time. In his subsequent declarations. He said he had not specifically heard that any Century 21 franchisees had a State license to sell insurance, but then he contradicted that later, indicating that they did sell insurance. That's correct, Your Honor. And then Mr. Omer was also asked, does Century 21 have any plans to offer our services? Had he ever heard of any plans for them to offer our services or to enter our marketplace or to join our trade organizations? Again, right down the line, he said no, no, no. Is this referring to surety insurance? It was commercial insurance, the specialty commercial insurance that we offer, and also surety bonds. He was asked about both. Then he was also asked, one other telling point here is the Century 21 franchise agreement. It says that franchisees can only use the term Century 21 in connection with a real estate brokerage business. Mr. Omer testified that, in fact, it means exactly what it says. We never, also, we never said that we do no advertising, as Century 21 is saying, but we only advertise in specialty magazines that go to our specialty insurance trade, and that's in a record. We advertise in magazines that go to general insurance agents. Again, taking the flip side, in his deposition, Mr. Omer said he didn't even know what a general insurance agent was. That's how disparate our two markets and our two services are. Let me ask on the likelihood of confusion, although there were no surveys or anything, looking at the Thane case, the Trek and Orbitrek, the Hot Wheels case, the Jaded Toys, Hot Wheels v. Hot Rigs, it seems to me that you have to be arguing that no reasonable jury could find likelihood of confusion. What is your response to that? Yes, absolutely. Or likelihood of delusion. And there are something I haven't even got to yet, but there are a couple of big pillars. I may as well get to it now. There is no case of which we are aware and no case that Century 21 has cited in which there has been this long of a period of coexistence with no likelihood of confusion and no mental association, not that we're aware of where likelihood of confusion or likelihood of delusion was ever found, especially under the circumstances here where they have 120,000 agents with 4,500 franchisees, all with a duty to report infringing uses. None of them have ever reported losing a sale to us. None of them have ever reported us to Century 21, despite the fact that two of their franchise witnesses in this case knew of us for years. Also, third-party use. There are an undisputed 170 third-party users. We actually thought, and we say it I think in a footnote in our brief, that we really believe that the number for likelihood of confusion purposes was 850 and that for delusion purposes we found 2,000 Century businesses in the United States resolving everything in Century 21's favor, Judge McNamee cut the number down to 170. Those were the businesses in the insurance business or the real estate business to which Century 21 did not object. So 170 undisputed third-party users. There is not a single case of which we are aware, nor of which they have cited, in which likelihood of confusion or likelihood of delusion has been found with that much third-party use. And frankly, not even with half that third-party use, not even with a third that much third-party use. We think that those two pillars that I just mentioned are each independently dispositive of this case. Then, if you talk about, again, the Omer deposition in which he said, not only are they not in our business, but they have never even heard of our business. They don't even know what it is. We think that that by itself is dispositive of at least the likelihood of confusion issue. So when you add all those things up, they're gigantic. Then we turn to a couple of other things. Century 21 has no records of insurance sales. It has no records of franchise fees received for the sales of insurance, even though its franchise agreement requires the payment of such fees should they exist. It has no policies, no policyholders. And there was one other thing I wanted to point out. Oh, the sophistication of the buyers, too, which is very, very powerful in our favor. Again, there is no genuine dispute that we sell specialty commercial insurance. It's usually on an excess and surplus lines basis. It's not the same kind of insurance. Say that again. It's not the same kind of insurance that Century 21 deals with when it's the only thing that Century 21. The only thing that deals with, and that's a good way of putting it, there is absolutely nothing in the record and the show that Century 21 sells insurance. Facts to the contrary are overwhelming and undisputed. The only thing that Century 21 does is about 10 of its franchisees refer people to third Century 21 are not franchised. What, for property insurance when they sell real estate or what are they? These other insurance agencies? I'm not really sure because we don't, yeah, they weren't, they're not part of the Century 21 umbrella. I don't really know. But I think that probably title insurance, homeowners insurance, that kind of stuff, which we don't sell. We're not even in that business. But that's all it is, is just a referral to a handful of people that sell the insurance. And again, those companies are not affiliated in any way with Century 21. Would you comment on the dilution claim? We are here on a summary judgment, and it seems that some of the factors, not all, a few of the factors really seem to weigh in favor of Century 21. If this is the case, is summary judgment appropriate? No, Your Honor, because no reasonable jury could find for Century 21, even if some of the factors weigh a little bit in its favor. And one thing that you mentioned before, I think the biggest problem that Century 21 has here is that they're trying to monopolize the commonly used word century. They're not trying to protect the unitary term Century 21. And the evidence shows only that the strength is related to that mark. They don't have any surveys, again, showing that people even recognize them by the term century. And again, this case is similar to Fruit of the Loom and also similar to the Metro publishing case, where they tried to monopolize the word I. And I would again go to the word what? I, E-Y-E. And I would again point to two of the big pillars. There has never been, at least I'm not aware of one, and they have not cited a case where there's been this much third party use and a likelihood of dilution was ever found. I mean, that's strong evidence that people don't view the word century as meaning Century 21. And again, the long period of coexistence. And for dilution purposes, it's measured from the first alleged diluting use, which they claim, they admit, was in 1978 when we sold our first surety bond. There has never been a likelihood of dilution found with that period of time of coexistence. And I would again, I would point to the AccuRide case. And I would also point to, I believe it's the Alpha Industries case from, no, ASTRA. The ASTRA case from the First Circuit, where they state that if all of the other uses of ASTRA have not diluted, the plaintiff's marked, and this one additional use will not dilute it either. And I would point to the AccuRide. And you don't have to use all your time. Thank you, Your Honors. Thank you. First of all, Your Honor, with respect to the allegation that there is a contradiction in Mr. Omer's testimony, we've provided a point-by-point analysis showing that there is no contradiction. It's true you have to be a Century 21 franchisee to get a Century 21 franchise. But Century 21 encourages its franchisees to sell insurance. ER 795 shows how that's done. This particular franchisee has an insurance division. It sells its insurance to its real estate customers. So to suggest that Century 21, the Century 21 mark is not used in connection with insurance just isn't correct. Okay. But it's not the same insurance. I mean, it's connected to the sale of real estate, isn't it? When you say the same insurance, if you look at ER 2987, Mr. Brown on his website advertises commercial liability coverage. I don't know of a case where a famous mark has ever been restricted this tightly. If you have a famous mark, you don't need to have identical marks in order to show confusion. You don't need to have identical services to have a likelihood of confusion. And in this particular case, there is no evidence of any significant third-party use. I would urge the Court to compare the statements made in the appellee's brief with the actual deposition testimony. Look, for example, at the deposition of mid-century insurance, whose witness conceded they don't have a sign, they don't have employees, all of their insurance is sold under the name Farmers. They may have mid-century on some policies, but she couldn't say how many. They don't put it on business cards. They don't put it on letterhead. The assertion that it's undisputed that there are 170 uses is just not true. There is no single piece of evidence showing public use by any of these third parties. Some of them admitted they don't even sell insurance. And if you look at the list, it includes things like burial services, payroll. Okay, I don't see how that's getting you to evidence of confusion or likelihood of confusion. I mean, it could be you can quibble with whether or not these are really similar, or maybe they've made statements that are stronger than you would like to have them. But how does this get you to a likelihood? My point is this, Your Honor. This is a summary judgment case. Each of the factors that are relevant in considering summary judgment had contravailing facts. Each party submitted over 200 separate statements of supposedly undisputed fact. Each party disputed at least 150 of those. Infringement is generally proved by weighing the facts in connection with each of these factors. And in this case, there is ample evidence on which a judge could. But not the number of trees that have been cut down. There has to be the strength of the facts themselves, right? Well, first of all, there's no dispute as to the strength of the mark. No, I understand. Other courts have found century and century 21 similar. Other courts have said you don't have to have identical services, that they can be related. That's what we have here. That weighs in favor of a finding of likelihood of confusion. Other courts have said if there's an overlap in trade channels, that weighs in favor of a finding of likelihood of confusion. And that's what we have here. And the absence of actual confusion is not entitled to a great deal of weight. It's certainly not enough to tip the scales in favor of a summary judgment in this case. Because of the way in which they've used the mark. They don't advertise to the public. Someone may have a century policy and never even think about it until they have a claim. That sets this case apart from every other case where confusion has been an issue. And I would just sum up by saying this, your honor. In this time of difficult financial straits, one of the few valuable assets that companies have left is their trademark. If the courts won't protect strong marks, we're in dire straits. And I would respectfully submit this decision should be reversed and remanded for trial. Thank you very much. Thank you, counsel. Case just argued is submitted for decision. We'll hear the last case for
judges: Schroeder, Nelson, Roth